1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7   RAYMUNDO PEREZ, et al.,

8                Plaintiff,                      No. C 05-5338 PJH

9         v.                                     **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT'S**
10                                               **MOTION FOR SUMMARY JUDGMENT**
    SAFETY-KLEEN SYSTEMS, INC.,
11
                 Defendant.
12   _____/

13  DAVID STEGALL,

14                Plaintiff,                     No. C 07-0886 PJH

15        v.

16
    SAFETY-KLEEN SYSTEMS, INC.,
17
                 Defendant.
18   _____/

19        Defendant's Motion for Summary Judgment came on for hearing on May 30, 2007.

20  Barron Ramos, Jeremy Fietz, Donald Edgar, and Kristin Caverly appeared for plaintiffs;

21  Robert Tollen and Janine Simerly appeared for defendant.  Having read all the papers

22  submitted and carefully considered the relevant legal authority, the court hereby GRANTS

23  in part and DENIES in part defendant's motion for the following reasons and for the

24  reasons stated at the hearing.

25                                     **BACKGROUND**

26        These actions arise from defendant Safety-Kleen Systems, Inc.'s ("Safety-Kleen")

27  alleged failure to provide meal and rest breaks to its employees.  There are two separate

28  complaints at issue.  Plaintiffs Reymundo Perez and Jerrell Doane allege the following

    causes of action in their complaint:  (1) Unlawful Failure to Pay Required Overtime (Wage

1   Order No. 7-2001, California Labor Code Sections 510, 1194, 1198); (2) Unjust

2   Enrichment/ Quantum Meruit; (3) Conversion; (4) Waiting Time Penalties (California Labor

3   Code Sections 201-203); (5) Failure to Provide Itemized Wage Statements (California

4   Labor Code Section 226); (6) Failure to Provide Meal Periods and Rest Breaks (California

5   Labor Code Sections 226.7, 512, and Wage Order No. 7-2001); and (7) Unfair Practices

6   Under Unfair Competition Act (California Business and Professions Code Sections 17200-

7   17208).  David Stegall's complaint alleges claims for:  (1) Failure to Provide Meal Periods

8   and Rest Breaks (California Labor Code Section 226.7); and (2) Unfair Practices Under

9   Unfair Competition Act (California Business and Professions Code Sections 17200).  Perez

10  and Doane's first and fourth causes of action (overtime and waiting time claims) were

11  dismissed by stipulation on May 23, 2006.  Defendant moves for summary judgment with

12  respect to all other remaining causes of action in the two complaints.

13          A.      Statutory Background

14          California Labor Code § 512 governs the provision of meal periods.  This provision

15  was enacted as part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of

16  1999, 1999 Stats. Ch. 124 (AB 60).  This statute provides that:

17          An employer may not employ an employee for a work period of more than
            five hours per day without providing the employee with a meal period of
18          not less than 30 minutes, except that if the total work period per day of
            the employee is no more than six hours, the meal period may be waived
19          by mutual consent of both the employer and employee. An employer may
            not employ an employee for a work period of more than 10 hours per day
20          without providing the employee with a second meal period of not less
            than 30 minutes, except that if the total hours worked is no more than 12
21          hours, the second meal period may be waived by mutual consent of the
            employer and the employee only if the first meal period was not waived.
22
23  It also states that the Industrial Welfare Commission ("IWC") may adopt an order

24  "permitting a meal period to commence after six hours of work if the commission

25  determines that the order is consistent with the health and welfare of the affected

26  employees."  Cal. Labor Code § 512.

27          In September of 2000, the California Labor Code was further amended to add

28  another provision regarding meal and rest periods, providing that "[n]o employer shall

    require any employee to work during any meal or rest period mandated by an applicable

order of the Industrial Welfare Commission."  Cal. Labor Code § 226.7(a).  It further states that if "an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Labor Code § 226.7(b).

Both labor code sections refer to IWC wage orders.  Prior to enactment of Labor Code § 512, the IWC's wage orders required meal periods.  It issued new wage orders in 2000, including Wage Order 7-2001 (effective January 1, 2001).[1]  While the IWC was de-funded by the California Legislature effective July 1, 2004, its wage orders, which govern wages, hours and working conditions in California, are still in effect.  Regarding meal periods, the IWC order states:

> Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.  An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

Wage Order 7-2001 ¶ 11.  It also governs rest periods, providing that:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

In addition to providing for meal and rest periods, California law requires that employers provide itemized wage statements to their employees:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is

---

[1]   Safety-Kleen concedes that Wage Order 7-2001 applies to its business.  Plaintiff notes that Wage Order 4-2001 may also apply to Safety-Kleen's business, but acknowledges Wage Order 7-2001 applies for purposes of this motion.

3

1   solely based on a salary and who is exempt from payment of overtime
2   under subdivision (a) of Section 515 or any applicable order of the
    Industrial Welfare Commission, . . . and (9) all applicable hourly rates in
3   effect during the pay period and the corresponding number of hours
    worked at each hourly rate by the employee.

4   Cal. Labor Code § 226(a).

5           B.      Factual Background

6           Plaintiff Stegall was employed by Safety-Kleen from November 1998-November

7   2004 as a Customer Service Representative ("CSR"), an employee who drives a truck and

8   visits Safety-Kleen's customers to service their equipment as part of Safety-Kleen's waste

9   management services.  Upon his employment, Stegall signed an agreement limiting his

10  ability to commence suit against the company to six months after the employment action in

11  dispute.  He knew that employees in California had the right to take rest and meal breaks,

12  but nobody at Safety-Kleen ever told him he was entitled to do so or that he could not do

13  so.  He felt that there was too much pressure to make his numbers to stop for breaks, but

14  admitted that a person could arrive at work an hour earlier and take their breaks.  He

15  usually ate while driving, but took lunch breaks a few times a month.  Safety-Kleen paid him

16  a base salary plus commission.

17          Plaintiffs Jerrell Doane and Reymundo Perez were also employed by Safety-Kleen

18  as CSRs.  Doane was paid salary plus commissions.  He was not paid by the hour, nor was

19  he paid overtime.  He knew that he was entitled to take breaks, but did not do so because

20  he had too much work to do.  Plaintiff Perez was paid salary plus commissions, but not

21  overtime.  Sometimes he took meal breaks.  No supervisor ever told him not to, but none

22  ever told him to do so.  He did not know that he was entitled to take breaks.

23          All three plaintiffs received bi-monthly pay stubs that reflected they had worked 80

24  hours per pay period.  Plaintiffs maintain that, on average, they worked in excess of 100

25  hours per pay period.

26  ///

27  ///

28  ///

4

**DISCUSSION**

A.      Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

"To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint."  Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must view the evidence in the light most favorable to the non-moving party.  United States v. City of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).  The court must not weigh the evidence or

1    determine the truth of the matter, but only determine whether there is a genuine issue for

2    trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).  If the nonmoving party

3    fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment

4    as a matter of law."  Celotex, 477 U.S. at 323.  Regardless of whether plaintiff or defendant

5    is the moving party, each party must "establish the existence of the elements essential to

6    [its] case, and on which [it] will bear the burden of proof at trial."  Id. at 322.

7           B.     Defendant's Motion

8           Safety-Kleen moves for summary judgment on the following bases.  First, it argues

9    that all of Stegall's claims must be dismissed because his claims are limited by a

10   contractual limitations clause.  Second, Safety-Kleen argues that plaintiffs' claims for meal

11   and rest period violations fail, because it provided them with those break periods.  Third,

12   Safety-Kleen maintains that plaintiffs cannot recover for its failure to accurately record their

13   hours worked, because they cannot show the requisite injury and intent.

14                1.     Stegall's Claims

15          Safety-Kleen first argues that Stegall's claims must be dismissed because he signed

16   an agreement with Safety-Kleen that he would not commence any action or suit against it

17   more than six months after the employment action in dispute.  He terminated his

18   employment in November 2004 and did not commence suit until September 28, 2006.

19   Specifically, Stegall signed the same agreement twice – on October 27, 1998 and

20   November 30, 1998 – which stated that "Employee further agrees. . . [t]hat Employee will

21   not file a charge or complaint or commence any action or suit relating to Employee's

22   employment with Safety-Kleen more than six months after the employment action in

23   dispute and that Employee waives any statute or limitations to the contrary."

24          The Ninth Circuit has analyzed contractual six-month limitation provisions under

25   California law, noting that "[m]any California cases have upheld contractual shortening of

26   statutes of limitations in different types of contracts, including employment situations."

27   Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir. 2001) (upholding summary

28   judgment in defendant's favor).  The Ninth Circuit has found that such provisions are not

6

1   unconscionable under California law.  Even though plaintiffs in <u>Soltani</u> submitted evidence

2   of procedural unconscionability, the court found that "California case law strongly indicates

3   that the six-month limitation provision is not substantively unconscionable."  <u>Id</u>. at 1043

4   (citations omitted).  "Given a sliding scale analysis, even assuming that the contract was a

5   non-negotiable adhesion contract, the substantive prong controls.  Indeed, California courts

6   have upheld shortened limitation periods in insurance contracts, which are quintessential

7   adhesion contracts."  <u>Id</u>. at 1044-45.

8        The contractual agreement signed by Stegall is therefore valid and enforceable.

9   While Stegall argues that the contract lacks foundation and has not been properly

10  authenticated, Stegall admits that the signatures on the contracts are his own.  While he

11  testified that he does not recall signing the contracts, he authenticated the document by

12  authenticating his signature on the contract.  <u>See</u> Fed. R. Evid. 901(b)(2).  Plaintiff provides

13  no evidence suggesting that the document is fraudulent, and it is therefore admissible.

14       Stegall also maintains that California Labor Code § 219 makes the contract

15  unenforceable, as it states "[n]othing in this article shall in any way limit or prohibit the

16  payment of wages at more frequent intervals, or in greater amounts, or in full when or

17  before due, but no provision of this article can in any way be contravened or set aside by

18  private agreement, whether written, oral, or implied."  The article to which Labor Code

19  § 219 refers includes Labor Code § 226.7, which governs the right to meal and rest

20  periods.  The contract Stegall signed, however, did not "contravene" or "set aside" his right

21  to meal and rest periods – it shortened the time period in which he could bring suit against

22  Safety-Kleen.  The statute of limitations for meal and rest period claims is not governed by

23  the Labor Code – it is set by Code of Civil Procedure § 338.  <u>See Murphy v. Kenneth Cole</u>

24  <u>Productions, Inc</u>., 40 Cal. 4th 1094, 1101 (2007).  Labor Code § 219, therefore, does not

25  invalidate Stegall's contract.

26       Stegall also argues that Safety-Kleen waived the 6-month contractual limitation

27  defense.  However, "an affirmative defense based upon a contractual limitations period

28  may be raised for the first time on summary judgment if no prejudice is caused to the

7

1   nonmoving party." <u>Han v. Mobil Oil Corp</u>., 73 F.3d 872, 878 (9th Cir. 1995).  Stegall does

2   not claim prejudice.  In any event, Safety-Kleen specifically asserted the contractual

3   limitation defense in its answer to Stegall's amended complaint.

4        Finally, Stegall claims that Safety-Kleen's May 2004 employee handbook

5   superseded the agreement containing the contractual limitations clause, because the

6   handbook explicitly supersedes "all previously issued handbooks, prior statements by the

7   Company or by any employee of the Company, and any other document inconsistent with

8   this Employee Handbook and the policies and procedures herein."  However, a contract in

9   writing may be modified only by another contract in writing, by an oral agreement to the

10  extent it is executed by the parties, or by an oral agreement supported by new

11  consideration.  Cal. Civil Code § 1698.  The handbook explicitly states that it is not a

12  contract and may be unilaterally changed by the company, so it does not have the power to

13  alter the 1998 contracts.  In addition, the handbook does not address when suit may be

14  brought against the company and does not contradict the contracts.  Nor does the

15  handbook's provision that state law "shall control" in "the event of a conflict" between such

16  laws and the handbook invalidate the contractual limitation, as state law allows contractual

17  modification of statute of limitations.  Summary judgment, therefore, is proper as to all of

18  Stegall's claims, as they are barred by the contractual limitations clause.

19               2.    Meal and Rest Period Claims

20       "An employer may not employ an employee for a work period of more than five

21  hours per day without providing the employee with a meal period of not less than 30

22  minutes," although the meal period may be waived by "mutual consent" under certain

23  conditions.  Nor may an employer "employ an employee for a work period of more than 10

24  hours per day without providing the employee with a second meal period of not less than

25  30 minutes" except that this period may also be "waived by mutual consent" in certain

26  circumstances.  Cal. Lab. Code § 512(a).

27       Safety-Kleen argues that the statute only requires that an employer "provide" an

28  employee with a meal period, meaning that defendant need only "furnish, supply, make

available, or afford" such breaks.  Safety-Kleen argues that "the nature of plaintiffs' work" provided them with the opportunity to take meal periods, because plaintiffs were truck drivers working solo away from the employer's premises.  There is no authority to support Safety-Kleen's argument that merely being off-site and away from management constitutes "provision" of breaks.  Certainly, employers could instruct their drivers not to take breaks, or otherwise imply that they may not take breaks.  Just because an employee works on the road does not end the inquiry as to whether meal periods were provided under the statute.

The court has examined all of the facts here in a light most favorable to plaintiffs and finds a dispute as to whether Safety-Kleen "provided" meal periods.  Safety-Kleen has no policy regarding meal breaks for CSRs.  Safety-Kleen does not have a method of determining how many hours a CSR in California works during the day.  See Williams Depo. Tr. at 102, 135.  Only since May 2004 have Safety-Kleen's employees had an employee handbook which states "your manager is responsible for providing you the local procedures regarding breaks and meal periods, subject to state and local laws and regulations.  If you are a non-exempt employee, you are required to take one meal break of at least 30 minutes each workday."  This handbook does not state that exempt employees have a right to a meal period as well.

Stegall, Perez, and Doane all declare that they were never relieved of all duty during any meal or break period.  They were on call at all times and were required to carry a company cell phone to maintain constant contact with the branch.  They were required to complete a detailed log each day which specifically stated they were on duty from the time they arrived at the branch until going home at the end of the day.  See Stegall Decl. ¶ 7; Perez Decl. ¶ 6; Doane Decl. ¶ 6.

At his deposition, Stegall testified that the Safety-Kleen managers never told him to stop and take a meal or rest breaks during the day.  Nor did they tell him not to.  See Stegall Depo Tr. at 43-44.  He knew there were posters at the branch where he worked, but never saw a poster about the right to take rest breaks and meal breaks.  Id. at 45.  He recalls one time when another employee was criticized by the manager for stopping to have

1    breakfast with another employee.  Id. at 46.  There was a lot of pressure to hit revenue

2    numbers each day, and the customers they were servicing closed around 4:00 or 5:00 p.m.

3    The CSRs attended weekly meetings stressing revenue and productivity, and the

4    employees were questioned about how many customers they serviced during the day.  Id.

5    at 51, 83.

6          While Stegall knew he had a right to breaks based on prior work experience, Perez

7    testified that he knew nothing about his right to take a rest or meal break when he worked

8    for Safety-Kleen.  Perez Depo. Tr. at 22.  He was never told to make sure he took his

9    break, or that he had a right to a break, or to record his breaks.  He was only told to go out

10   there and get his work done.  Id. at 23.  He also said that he did not take breaks because

11   he had too much work to do, and he did not want to work later.  Nobody ever told him not to

12   take breaks, but he does not recall anyone telling him to take breaks.  He speculated that

13   other employees decided whether or not to take a rest break.  Id. at 72.  Doane stated that

14   the handheld he was given by Safety-Kleen would say "break" on it, but sometimes it would

15   list no breaks on a given day.  Doane knew from prior experience that he had a right to take

16   a meal break and that he was entitled to two short rest breaks for an eight hour shift, but he

17   did not know how long these breaks were supposed to be.  Id. at 57.  His supervisor did not

18   encourage him to take breaks.  He speculates that "the ultimate decision [whether to take

19   breaks] was mine."  Id. at 71.

20         There is a genuine issue of material fact as to whether Safety-Kleen provided meal

21   periods to plaintiffs, particularly given the lack of a policy for meal breaks, the fact that

22   plaintiffs were never told to take breaks, the fact that Perez did not even know he had a

23   right to take breaks, the general pressures of the position, and the fact that plaintiffs were

24   required to fill out a call log stating they were on duty all day long.  These facts also reveal

25   a dispute as to whether Safety-Kleen "authoriz[ed] and permit[ted] rest periods" as required

26   by Wage Order 7-2001 ¶ 12.  See also Cal. Labor Code § 226.7 (authorizing pay where

27   "employer fails to provide an employee a meal period or rest period in accordance with an

28   applicable order of the Industrial Welfare Commission").

1    In light of the above, the court need not resolve plaintiffs' argument that California

2  law "does not permit an employee . . . to decide to take a break or not take a break."  The

3  court, however, notes that the applicable IWC Wage Order indicates that an employer must

4  do something affirmative to provide a meal period, and may not merely assume such

5  breaks are taken.  The Wage Order states that "[n]o employer shall employ any person for

6  a work period of more than five hours without a meal period of not less than thirty minutes,"

7  and also states that "unless the employee is relieved of all duty during a 30 minute meal

8  period, the meal period shall be considered an 'on duty' meal period and counted as time

9  worked."  IWC Wage Order 7-2001.  While Safety-Kleen argues that this IWC Order is not

10  within the scope of the authority conferred by the legislature because its mandatory

11  language contradicts Labor Code § 512, the court need not resolve this issue.  At the very

12  least, consistent with Labor Code § 512, the Wage Order requires the employer to

13  affirmatively provide a meal break and provide the opportunity for the employee to be

14  "relieved of all duty during a 30 minute meal period."

15    This result is consistent with California court decisions on meal and rest period

16  provision.  In Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949 (2005), the California

17  Court of Appeals reversed the trial court's grant of summary judgment in defendant's favor

18  on violations of California statute and regulations relating to meal periods, rest breaks, and

19  itemized wage statements.  Regarding meal periods, the court first noted that the

20  evidentiary burden rests with the employer, and the employer's failure to keep the required

21  statutory records falls on it.  Id. at 961.  Defendant's manager declared that the drivers

22  were protected by a collective bargaining agreement that provided them with meal breaks,

23  and that they were constantly on the road, had the power to decide whether to take breaks,

24  and so their activity could not be regulated by defendant.  Defendant assumed that the

25  drivers took breaks.  Id. at 962.  The court found that defendant had the ability to monitor its

26  drivers' activities, and did so with respect to other activities.  The court found "defendant's

27  obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming

28  that the meal periods were taken, because employers have 'an affirmative obligation to

1    ensure that workers are actually relieved of all duty.'" Id. (citing DLSE Opinion Letter No.

2    2002.02.28 (Jan. 28, 2002)).  The court also found that defendant did not "authorize and

3    permit" rest periods as required, noting that defendant's computer system did not contain a

4    code for rest breaks and that drivers felt pressured not to take such breaks because they

5    were not on a list of paid delays.  Id. at 963.  The employer petitioned for review, but the

6    petition for review by the Supreme Court was denied.

7          Similar to the employer in Cicairos, Safety-Kleen assumed that plaintiffs knew they

8    had the right to take a meal break without ever actively providing breaks (or even telling its

9    employees they had that right) or monitoring whether breaks were taken.  Safety-Kleen

10   argues that Cicairos carries little weight, because it relied on a DLSE opinion letter which

11   has no legal force or effect, and, in any event, DLSE subsequently changed its position to

12   state that the Labor Code required that the employer "make a meal period available and to

13   give the employee an opportunity to take it."  But even if Safety-Kleen is correct and it had

14   no "affirmative obligation to ensure" that its workers are actually relieved of duty, it was

15   obligated to provide off-duty meal and rest breaks.  See Murphy, 40 Cal. 4th 1094

16   (California's meal time provisions are to be "interpreted broadly in favor of protecting

17   employees").

18         In light of the disputed facts here, summary judgment is not proper as to Perez and

19   Doane's claims for meal and rest period violations.  Stegall's claims, however, fail for the

20   contractual limitations reasons discussed above.  Summary judgment is also denied as to

21   Perez and Doane's derivative claims (California Business and Professions Code § 17200,

22   unjust enrichment, quantum meruit, and conversion).  These claims are predicated on

23   Safety-Kleen's alleged failure to provide meal and rest periods, and Safety-Kleen argued

24   no separate grounds for dismissing these claims.

25                  3.     Itemized Wage Statement Claim

26         Safety-Kleen concedes it failed to record total hours worked on plaintiffs' wage

27   statements as it was obligated to do under California Labor Code § 226(a)(2).  But it argues

28   that plaintiffs cannot prove the requisite intent or injury under the statute, which provides

12

1    that "[a]n employee suffering injury as a result of a knowing and intentional failure by an

2    employer to comply with subdivision (a) is entitled to recover . . . not exceeding an

3    aggregate penalty of four thousand dollars."  Cal. Labor Code § 226(e).

4         Safety-Kleen maintains that its failure to accurately record the number of hours was

5    not "knowing and intentional" because defendant was unaware that recording the number

6    of hours was required under California law.  Defendant, however, concedes that it

7    knowingly and intentionally provided wage statements containing the incorrect total hours

8    worked.  Ignorance of the law, however, does not excuse Safety-Kleen.  See People v.

9    Snyder, 32 Cal. 3d 590, 592-593 (1982) ("It is an emphatic postulate of both civil and penal

10   law that ignorance of a law is no excuse for a violation thereof.").  In Wang v. Chinese Daily

11   News, Inc., 435 F. Supp. 2d 1042 (C.D. Cal. 2006), the court found a violation of California

12   Labor Code § 206, noting that defendants conceded they knew their wage statements did

13   not comply with California law, citing to evidence that the wage statements always listed

14   their hours at 86.66.  Id. at 1051.  So too here, where Safety-Kleen's statements always list

15   80.00 hours per two week period regardless of hours actually worked.  The Wang court

16   also noted that defendants had the "responsibility to ameliorate the problem," but their

17   failure to do so and their position that the "violations are merely technical also demonstrate

18   that the violations were knowing and intentional."  Id.  Here, Safety-Kleen's own person

19   most knowledgeable testified that Safety-Kleen has no method of calculating how many

20   hours a CSR works in a given day, indicating it has not ameliorated the problem, even

21   though it issued a California law handbook in 2005.  Therefore, there is a question of fact

22   as to Safety-Kleen's intent, and summary judgment is improper on this basis.

23        Regarding the statute's injury requirement, Safety-Kleen argues that neither Perez

24   nor Doane were injured by the omission of accurate hours on their wage statement,

25   because they were salaried employees who were not paid overtime.  While plaintiffs do not

26   make any claim that they are entitled to overtime, the "lawsuit, and the difficulty and

27   expense Plaintiffs have encountered in attempting to reconstruct time and pay records, is . .

28   . evidence of the injury suffered as a result of [the] wage statements."  Wang, 436 F. Supp.

2d at 1050.  Plaintiffs will need to engage in "discovery and mathematical computations" in order to calculate meal and rest period payments they claim they are entitled to.  Id. Plaintiffs testified that they typically worked 100 hours or more per two week period, and took rest and meal periods rarely, if at all.  While it is true that the employer bears "the consequences for . . . failure" to keep records under the statute, plaintiffs will have to determine their own damages for missed meal and rest periods due to the absence of records.  Cicairos, 133 Cal. App. 4th at 961.  This is sufficient to establish a triable issue as to injury.  Summary judgment on this claim is therefore not proper at this time.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS in part and DENIES in part defendant's motion.

Summary judgment is GRANTED as to Stegall's claims.  This order terminates the Stegall case (Case No. C 07-0886 PJH) and any pending motions in that case.  The clerk shall close that case file.

Summary judgment is DENIED as to the claims in the Perez case (Case No. C 05-5338 PJH).

IT IS SO ORDERED.

Dated: June 27, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge