1
2
3
4              UNITED STATES DISTRICT COURT
5              NORTHERN DISTRICT OF CALIFORNIA
6
7
8  REYMUNDO PEREZ and JERREL DOANE,
9          Plaintiffs,                           No. C 05-5338 PJH
10     v.                                        **ORDER GRANTING IN PART AND
                                                 DENYING IN PART MOTIONS FOR
11                                               SUMMARY JUDGMENT AND FOR
                                                 CLASS CERTIFICATION**
12  SAFETY-KLEEN SYSTEMS, INC.,
13          Defendant.
    _____/
14
15        Now before this court are the motion of defendant Safety-Kleen Systems, Inc.

16  ("Safety-Kleen") for summary judgment or partial summary judgment and the motion of

17  plaintiffs Reymundo Perez and Jerrel Doane ("Plaintiffs") for class certification.  Jeremy R.

18  Fietz and Barron E. Ramos appeared for plaintiffs; Robert William Tollen, David Wiseblood,

19  and Allison Moser appeared for defendant.  Having read all the papers submitted and

20  carefully considered the relevant legal authority, defendant's motion for summary judgment

21  is hereby GRANTED IN PART AND DENIED IN PART.  Plaintiffs' motion for class

22  certification is hereby GRANTED IN PART AND DENIED IN PART.

23                              **BACKGROUND**

24        Plaintiffs allege that Safety-Kleen failed to provide meal and rest breaks to its

25  customer service representatives ("CSR") as required by California Labor Code § 512 and

26  Industrial Welfare Commission ("IWC") Wage Order 7-2001.  Plaintiffs further allege that

27  Safety-Kleen failed to provide accurate itemized wage statements to CSRs as required by

28  California Labor Code § 226.

1    For the second time Safety-Kleen moves for summary judgment, or in the

2  alternative, partial summary judgment.  In support of its motion, Safety-Kleen argues that

3  an employer violates its duty to provide meal and rest breaks only if it forces employees to

4  forego breaks.  Safety-Kleen contends that it is entitled to summary judgment on plaintiffs'

5  meal and rest break claims because there is no evidence that it ever prohibited plaintiffs

6  from taking breaks.  Safety-Kleen also argues that it is entitled to summary judgment on

7  plaintiffs' wage statement claim because plaintiffs have failed to present any evidence of

8  injury and have failed to present any evidence that Safety-Kleen intended to provide

9  inaccurate wage statements.  Also for the second time, plaintiffs move for class

10  certification.

**DISCUSSION**

12    A.    Legal Standards

13    1.    Summary Judgment

14    Summary judgment shall be granted if "the pleadings, the discovery and disclosure

15  materials on file, and any affidavits show that there is no genuine issue as to any material

16  fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

17  56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v.

18  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

19  there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

20  Id.  The court must view the facts in the light most favorable to the non-moving party and

21  give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita

22  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. City of

23  Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).  "To show the existence of a 'genuine' issue, . .

24  . [a plaintiff] must produce at least some significant probative evidence tending to support

25  the complaint."  Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990)

26  (quotations omitted).  The court must not weigh the evidence or determine the truth of the

27  matter, but only determine whether there is a genuine issue for trial.  Balint v. Carson City,

28  180 F.3d 1047, 1054 (9th Cir. 1999).

1    A party seeking summary judgment bears the initial burden of informing the court of

2  the basis for its motion, and of identifying those portions of the pleadings and discovery

3  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

4  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

5  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

6  than for the moving party.  On an issue where the nonmoving party will bear the burden of

7  proof at trial, the moving party can prevail merely by pointing out to the district court that

8  there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving

9  party meets its initial burden, the opposing party must then set forth specific facts showing

10  that there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P.

11  56(e); Anderson, 477 U.S. at 250.

12          2.    Class Certification

13    In order for a class action to be certified, plaintiffs must prove that they meet the

14  requirements of Federal Rule of Civil Procedure 23(a) and (b).  As a threshold to class

15  certification, plaintiffs must satisfy four prerequisites under Rule 23(a).  First, the class must

16  be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ.

17  P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R.

18  Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical

19  of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class

20  representative must be able to protect fairly and adequately the interests of all members of

21  the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification bear the

22  burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of

23  Southwest v. Falcon, 457 U.S. 147, 156 (1982).

24    If all four prerequisites of Rule 23(a) are satisfied, the court then determines in

25  addition whether to certify the class under one of the three subsections of Rule 23(b),

26  pursuant to which named plaintiffs must establish that 1) there is a risk of substantial

27  prejudice from separate actions; or 2) declaratory or injunctive relief benefitting the class as

28  a whole would be appropriate; or 3) common questions of law or fact common to the class

1    predominate and that a class action is superior to other methods available for adjudicating

2    the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

3          The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

4    determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

5    177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine

6    whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes

7    Helicopters, Inc. 708 F.2d 475, 480 (9th Cir. 1983).  In doing so, the court must accept the

8    substantive allegations contained in plaintiffs' complaints as true, but will consider matters

9    beyond the pleadings in order to ascertain whether the asserted claims or defenses are

10   susceptible of resolution on a class wide basis.  See McCarthy v. Kleindienst, 741 F.2d

11   1406, 1419 n.8 (D.C. Cir. 1984).

12         B.    Defendant's Motion for Summary Judgment

13         1.    Meal and rest break claims

14         California's meal and rest break requirements are set forth in both the California

15   Labor Code and in Wage Orders promulgated by the Industrial Welfare Commission

16   ("IWC").  The IWC was established by the California Legislature in 1913.  It is a quasi-

17   legislative body authorized by statute to issue regulations or orders governing wages,

18   hours, and working conditions.  The IWC has promulgated 15 wage orders, following a

19   similar format, which each apply to separate industries or occupations.  See Collins v.

20   Overnite Transportation Co., 105 Cal. App. 4th 171, 174 (2003).

21         The Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999, 1999 Stats.

22   Ch. 124 (A.B. 60) was a response to the IWC's amendment of five wage orders on April 11,

23   1997, which eliminated the state's daily overtime rule in favor of the less restrictive weekly

24   overtime rule of the federal Fair Labor Standards Act ("FLSA").  Id. at 175.  California's Act

25   "established a new statutory scheme governing hours of labor and overtime compensation

26   for all industries and occupations, which codified certain provisions of IWC wage orders,

27   amended other provisions, and added a series of new options for alternative workweeks."

28   Id. at 176.

4

1    California Labor Code § 512, which was enacted as part of A.B. 60, states in part:

2        An employer may not employ an employee for a work period of more than
         five hours per day without providing the employee with a meal period of
3        not less than 30 minutes, except that if the total work period per day of the
         employee is no more than six hours, the meal period may be waived by
4        mutual consent of both the employer and employee.  An employer may
         not employ an employee for a work period of more than 10 hours per day
5        without providing the employee with a second meal period of not less than
         30 minutes, except that if the total hours worked is no more than 12 hours,
6        the second meal period may be waived by mutual consent of the employer
         and the employee only if the first meal period was not waived.
7
     Cal. Lab. Code § 512(a).
8
         Section 512 codified existing wage orders that already required employers to provide
9
     meal breaks.  A.B. 60, 1999 Leg., Reg. Sess. (Cal. 1999).  Wage Order 7, which applies
10
     here, provides in part:
11
         No employer shall employ any person for a work period of more than five
12       (5) hours without a meal period of not less than 30 minutes, except that
         when a work period of not more than six (6) hours will complete the day's
13       work the meal period may be waived by mutual consent of the employer
         and the employee.
14
         California Labor Code § 226.7, which was enacted in 2000 as part of A.B. 2509,
15
     further provides in part:
16
             (a) No employer shall require any employee to work during any
17       meal or rest period mandated by an applicable order of the Industrial
         Welfare Commission.
18           (b) If an employer fails to provide an employee a meal period or
         rest period in accordance with an applicable order of the Industrial Welfare
19       Commission, the employer shall pay the employee one additional hour of
         pay at the employee's regular rate of compensation for each work day that
20       the meal or rest period is not provided.

21   Cal. Lab. Code § 226.7.

22       Safety-Kleen argues that it is entitled to summary judgment because an employer

23   violates its duty to "provide" breaks only when it forces an employee to forego a break, and

24   there is no evidence that Safety-Kleen ever prohibited plaintiffs from taking their breaks.

25   Plaintiffs respond that employers have a strict duty to ensure that employees take the

26   required breaks or, in the alternative, that employers have a duty to "meaningfully and

27   systematically" provide breaks to their employees.  These arguments were advanced a

28   year ago by the parties in the briefing on defendant's "early" motion for summary judgment,

which the court permitted based on defendant's insistence that the issue could be decided as a matter of law before discovery was completed.  In denying summary judgment, the court did not reach the specific question of whether "provide" means "ensure" or simply "make available" but permitted defendant to raise the issue again after completion of discovery.

Until a few days ago, Cicairos v. Summit Logistics, 133 Cal. App. 4th 949 (2005) was the only California case directly interpreting an employer's obligation regarding meal breaks and was the case upon which most California plaintiffs relied in asserting meal break violations.  In Cicairos, the plaintiffs worked as truck drivers delivering goods to grocery stores.  The plaintiffs and the employer were parties to a collective bargaining agreement that provided for meal periods and rest breaks.  Id. at 955.  The plaintiffs' trucks were equipped with an on-board computer that recorded speed, starts and stops, and time.  Drivers were required to manually input activity codes for other information, such as road construction and heavy traffic, that the computer could not sense itself.  The employer did not designate an activity code for meal and rest breaks.  Drivers were not paid for time unless it was accounted for using one of the designated activity codes.[1]  The plaintiffs also produced evidence that management pressured drivers to make more than one daily trip, which discouraged drivers from stopping for lunch.  Id. at 955-56.

The California Court of Appeal held that these facts amounted to a violation of the employer's obligation to provide meal periods to the drivers.  The court rejected the employer's argument that, because it could not monitor its drivers' activities, it could only assume that the drivers were taking their authorized meal breaks.  Id. at 962.  The court held that the employer was, in fact, monitoring its drivers' activities through the use of an on-board computer system, but that it failed to provide meal periods by not designating an activity code and by pressuring its drivers to make more than one daily trip.  Id.  Relying on

---

[1] Employers must pay employees for rest period time but not for meal period time.  See 8 Cal. Code Regs. § 11070, subsection 12 ("Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.").

1    an opinion letter of the Department of Labor Standards Enforcement (DLSE), the court held

2    that, under the facts presented, the employer could not assume that its drivers were taking

3    meal periods because it had "'an affirmative obligation to ensure that workers are actually

4    relieved of all duty.'" Id. (quoting DLSE Opinion Letter No. 2002.01.28 (Jan. 28, 2002)).

5            Although the court in Cicairos quoted Section 512 and referred to the applicable

6    Wage Order at the beginning of its opinion, id. at 953, the court did not discuss either

7    authority in its analysis.  The court did not independently analyze the meaning of the word

8    "provide" under Section 512, but instead relied on the DLSE opinion letter for its conclusion

9    that an employer, at least under some circumstances, has "an affirmative obligation to

10   ensure" that employees take meal breaks.  The DLSE Opinion Letter, however, does not

11   itself discuss or analyze the statute and only indirectly refers to the applicable Wage Order.

12   The purpose of the letter was not to interpret an employer's obligation to provide meal

13   periods, but instead was to interpret the employer's obligation to "authorize and permit" rest

14   periods.  Given that the court in Cicairos did not discuss the application of Section 512 or

15   the relevant Wage Order to the facts presented, and that the DLSE Opinion Letter on which

16   the court relied did not itself analyze Section 512, Cicairos is not authority for the

17   proposition that an employer violates its duty to "provide" meal breaks any time an

18   employee misses a meal break, regardless of the employee's reason for missing the break

19   or the employer's policies regarding breaks.

20           The court in Cicairos was careful to limit its holding to the specific facts of the case,

21   namely, the employer's failure to provide an activity code for breaks even though it required

22   drivers to use activity codes for all other activities, and its practice of pressuring drivers to

23   make more than one daily trip, which made drivers feel that they should not stop for meals.

24   Id. at 956, 962.  Although the employer did not actually prohibit meal periods, it

25   discouraged drivers from taking breaks by regulating their activities to such a significant

26   degree without providing any means for drivers to take meal breaks.  Cicairos can thus be

27   read to hold that an employer is liable for failing to "provide" meal breaks if it has a policy or

28   practice of prohibiting or discouraging meal breaks.

1      This reading of Cicairos is consistent with a California Supreme Court case that

2  characterized Section 226.7 as prohibiting an employer from requiring an employee to work

3  through a meal or rest period.  See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094,

4  1104 (2007) ("Section 226.7, subdivision (b) requires that employees be paid 'one

5  additional hour of pay' for each work day that they are required to work through a meal or

6  rest period.").  The Court in Murphy repeatedly described the employer's duty under

7  Section 226.7 as an obligation not to deny or deprive employees of breaks.  See id. ("[i]f

8  denied two paid rest periods in an eight-hour work day . . ."); ("[a]n employee forced to

9  forego his or her meal period . . ."); ("the employee has been deprived of the right to be free

10  of the employer's control . . .").  Although the Court in Murphy was not directly interpreting

11  the meaning of Section 226.7(b), its characterization of the employer's duty is nonetheless

12  persuasive authority in construing an employer's duty to "provide" meal breaks.  See Brown

13  v. Federal Express Corp., 2008 U.S. Dist. LEXIS 17125, at *15-16 (C.D. Cal. Feb. 26,

14  2008) (observing that characterization of employer's duty in Murphy is instructive but not

15  conclusive because Court was not considering the issue directly).

16      The conclusion that an employer may not discourage meal breaks is also consistent

17  with three other recent cases in which district courts have interpreted an employer's

18  obligation under Section 512.  In White v. Starbucks, 497 F. Supp. 2d 1080, 1088 (N.D.

19  Cal. 2007), the plaintiff produced no evidence of an employer policy that discouraged or

20  prevented meal breaks, but instead argued that employers "must affirmatively enforce the

21  meal break requirements."  The court rejected that rule, holding that "the employee must

22  show that he was *forced to forego* his meal breaks as opposed to merely showing that he

23  did not take them regardless of the reason."  Id. at 1089 (emphasis in original).  The court

24  distinguished Cicairos, reasoning that the employer policies in that case "effectively

25  deprived" employees of their breaks.  Id.  In contrast, the plaintiff in White had produced no

26  evidence of any policy or practice that had discouraged him from taking his breaks.  Id.

27      The court reached a similar conclusion in Brown v. Federal Express Corp., 2008

28  U.S. Dist. LEXIS 17125 (C.D. Cal. Feb. 26, 2008).  The plaintiffs in that case alleged that

1    the employer's policies and practices "put them under excessive pressure to make

2    deliveries as quickly as possible, such that they were unable to take meal breaks and rest

3    breaks within the time required by the law." Id. at *6.  The plaintiffs argued that FedEx was

4    required to ensure that they took their meal breaks. Id. at *14.  The court rejected this

5    argument, relying on language in Murphy for its conclusion that an employer is liable only

6    when an employee is "'forced to forego'" a meal period. Id. at *15.  The court also

7    reasoned that requiring the employer to enforce meal breaks would place an undue burden

8    on employers whose employees are numerous and not in regular contact with the employer

9    during the day, and "would create perverse incentives, encouraging employees to violate

10   company meal break policy in order to receive extra compensation under California wage

11   and hour laws." Id. at *16-17.  As in White, the court rejected the argument that Cicairos

12   imposes a strict duty on employers to enforce meal break requirements.  Instead, the court

13   read Cicairos as imposing liability "where an employer simply assumed breaks were taken,

14   despite its institution of policies that prevented employees from taking meal breaks." Id. at

15   *18.

16          A third case, Kenny v. Supercuts, 2008 WL 2265194 (N.D. Cal. June 2, 2008),

17   reached the same conclusion as both White and Brown.  There, the court rejected the

18   plaintiff's argument that an employer is liable for failing to provide a break "simply because

19   the evidence demonstrates that the employee did not actually take a full 30-minute break."

20   Id. at *6.  In reaching its conclusion, the court noted that Cicairos did not analyze Section

21   512, and that the DLSE Opinion Letter on which it relied does not have the force of law. Id.

22   at *5.

23          After this order was substantially written but not issued, another division of the

24   California Court of Appeal distinguished Cicairos on the facts and relying on Brown and

25   Starbucks, concluded that employers need not ensure meal breaks are actually taken, but

26   need only make them available. Brinker Rest. Corp. v. Superior Court, - - -Cal. Rptr. 3d - -

27   -, 2008 WL 2806613 (Cal. Ct. App. Jul. 22, 2008).

28

                                            9

1        As noted by the Court of Appeal, the issue previously decided by this court was

2   whether defendant "provided" meal breaks to plaintiffs, not whether defendants were

3   required to ensure that meal breaks were taken.  Based on the authority cited above, this

4   court's analysis of Cicairos, the most often-cited case, and the more developed factual

5   record of both plaintiffs' and defendant's conduct, the court finds that while employers

6   cannot impede, discourage or prohibit employees from taking meal breaks, they need only

7   make them available, not ensure they are taken.

8        While the court previously found a triable issue as to whether Safety-Kleen provided

9   meal breaks, reviewing that evidence in light of the court's legal conclusion and along with

10  the new evidence obtained during discovery, the court finds that plaintiffs have failed to

11  produce evidence sufficient to create a triable issue of fact as to whether Safety-Kleen

12  discouraged or prohibited plaintiffs from taking meal breaks.  Plaintiffs stated in their

13  declarations that they were "under constant pressure to service customers, to sell, to stay

14  in the field until the last possible minute, and to not come back to the branch until the day

15  was done.  As a result, there was never a meaningful opportunity to take a meal break

16  since [plaintiffs] had to meet revenue targets imposed by Safety-Kleen under threat of

17  potential termination."  Plaintiffs' declarations do not point to a specific policy or practice

18  that discouraged them from taking their meal breaks nor do they provide any facts

19  regarding threats of termination.  "A conclusory, self-serving affidavit, lacking detailed facts

20  and any supporting evidence, is insufficient to create a genuine issue of material fact."

21  F.T.C. v. Publisher's Clearinghouse, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

22       Moreover, evidence that plaintiffs were employed in high-pressure jobs is not, by

23  itself, sufficient to defeat summary judgment under the authorities discussed above.  The

24  plaintiffs in Cicairos did not simply allege that the high-pressure nature of their work

25  discouraged them from taking breaks; they produced evidence that their schedules were

26  highly regulated through the use of activity codes and that the employer had provided no

27  activity code for meal breaks.  There is no authority for the proposition that an employer is

28  liable for failing to provide meal breaks simply because an employee chooses to forego a

1    meal break in order to complete his or her work, absent evidence of a specific employer

2    policy or practice of discouraging breaks.

3        It is undisputed that Safety-Kleen never scheduled any meal breaks for plaintiffs,

4    and that Safety-Kleen never informed plaintiffs of their meal break rights except to place the

5    IWC's Wage Order posters in the branch offices, and to state in the employee handbook

6    that "[y]our manager is responsible for providing you the local procedures regarding breaks

7    and meal periods, subject to state and local laws and regulations."  Plaintiffs cite no

8    authority, however, for the proposition that an employer is required to schedule meal

9    breaks for its employees or to inform employees of meal break rights other than to post

10   Wage Order posters.  While the court in <u>Cicairos</u> noted that the employer did not schedule

11   meal breaks for its drivers, the court made this observation while discussing the employer's

12   policy of regulating every other aspect of its drivers' schedules through the use of activity

13   codes.  133 Cal. App. 4th at 962.  Plaintiffs have presented no evidence that their

14   schedules were regulated in a manner remotely similar to the drivers in <u>Cicairos</u>.[2]  The

15   court finds that there is no authority for plaintiffs' argument that Safety-Kleen had a duty to

16   schedule meal breaks for its CSRs.  <u>See Kenny</u>, 2008 WL 2265194, at *6 (finding "no

17   support in the statute or caselaw" for the plaintiff's argument that employer was required to

18   schedule meal breaks).

19       Plaintiffs have also produced evidence of potentially misleading language regarding

20   meal breaks in Safety-Kleen's employee handbook.  The handbook states: "If you are a

21   non-exempt employee, you are required to take one meal break of at least 30 minutes each

22   workday."  The handbook does not address break requirements for exempt employees, and

23   could therefore be interpreted as implying that exempt employees are not entitled to meal

24   periods.  Plaintiffs argue that because Safety-Kleen classified its CSRs as exempt, the

25   handbook could have misled them into thinking they had no right to take meal breaks.

26   _____

27       [2] Although plaintiffs claim in their brief that Safety-Kleen "supplied its drivers with a
     computerized tracking system for the purpose of recording their activity," they have provided
28   no citation to the record in support of this allegation, and the court finds no evidence to support
     this statement.

1   Plaintiffs do not mention the employee handbook in their declarations, however, and they

2   have produced no evidence that they, or other CSRs for that matter, ever even read the

3   handbook.  There can be no triable issue of fact as to whether the handbook discouraged

4   plaintiffs from taking meal breaks where there is no evidence that plaintiffs ever read the

5   handbook in the first place.

6        Accordingly, the court finds that there is no triable issue of fact as to whether Safety-

7   Kleen provided meal breaks to its CSRs.  Safety-Kleen's motion for summary judgment is

8   therefore GRANTED as to plaintiffs' claim that Safety-Kleen failed to provide meal breaks in

9   violation of Section 512 and Wage Order 7.

10       Safety-Kleen also moved for summary judgment on plaintiffs' rest break claim.

11  There is no statutory equivalent to Section 512 requiring employers to provide rest breaks.

12  Instead, Wage Order 7 requires employers to "authorize and permit" employees to take a

13  paid ten-minute break for every four hours worked.  See 8 Cal. Code Regs. § 11070,

14  subsection 12.  Plaintiffs did not oppose Safety-Kleen's motion on the rest break claim, and

15  the court finds that there is no evidence that Safety-Kleen failed to "authorize and permit"

16  rest breaks.  Accordingly, Safety-Kleen's motion for summary judgment is GRANTED as to

17  plaintiffs' rest break claim as well.

18       2.      On-duty meal break claim

19       Wage Order 7 provides, in relevant part:

20          Unless the employee is relieved of all duty during a 30 minute meal period,
            the meal period shall be considered an "on duty" meal period and counted
21          as time worked.  An "on duty" meal period shall be permitted only when
            the nature of the work prevents an employee from being relieved of all
22          duty and when by written agreement between the parties an on-the-job
            paid meal period is agreed to.  The written agreement shall state that the
23          employee may, in writing, revoke the agreement at any time.

24       Safety-Kleen argues that it is entitled to summary judgment on plaintiffs' claim that it

25  failed to relieve plaintiffs of "all duty" during meal period because plaintiffs always had the

26  opportunity to take breaks free of duty.  Plaintiffs' declarations, however, state that they

27  were "required to carry a company cell phone so as to maintain constant contact with [the]

28  branch."  Plaintiffs further allege that they were "required to be in readiness to work at all

1   times" during the work day, and that Safety-Kleen required them to complete a log each

2   day that indicated they were on duty from the time they arrived at the branch office until

3   they went home at the end of the day.  It is undisputed that Safety-Kleen never obtained

4   agreements from plaintiffs to take on-duty meal breaks.  Plaintiffs have therefore produced

5   evidence sufficient to establish a triable issue of fact as to whether they were relieved of all

6   duty during their breaks or were required to be available to work at all times and summary

7   judgment is therefore DENIED.

8              3.       Wage statement claim

9        California Labor Code § 226 provides:

10           Every employer shall, semimonthly or at the time of each payment of
             wages, furnish each of his or her employees . . . an accurate itemized
11           statement in writing showing . . . total hours worked by the employee. . . .

12       Subsection (e) of section 226 provides that "[a]n employee suffering injury as a

13   result of a knowing and intentional failure by an employer" to provide an itemized wage

14   statement showing total hours worked is entitled to recover a penalty plus costs and

15   attorney's fees.

16       Plaintiffs allege that their wage statements typically indicated 80 hours per two-week

17   pay period, when in fact they usually worked more than 100 hours per pay period.  Safety-

18   Kleen does not dispute that it failed to accurately record plaintiffs' hours on their wage

19   statements.  Instead, Safety-Kleen argues, as it did in its previous motion for summary

20   judgment, that it is entitled to summary judgment because plaintiffs have presented no

21   evidence of injury resulting the inaccurate wage statements or of its intent.  The court has

22   already found, relying on Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042, 1050

23   (C.D. Cal. 2006), that Plaintiffs' "lawsuit, and the difficulty and expense plaintiffs have

24   encountered in attempting to reconstruct time and pay records is, . . . evidence of the injury

25   suffered as a result of [the] wage statements."  Safety-Kleen provides no reason why the

26   court should change its previous finding that plaintiffs have established a triable issue as to

27   injury.

28

1    Safety-Kleen also argues that its failure to accurately list plaintiffs' hours was not

2  intentional because the wage statements were prepared by Automatic Data Processing,

3  Inc. (ADP). The court in Chang rejected an identical argument. See id. at 1051.

4  Furthermore, that Safety-Kleen did not intend for ADP to record 80 hours on the wage

5  statements is immaterial; the relevant question is whether Safety-Kleen intended to omit

6  plaintiffs' actual hours on their wage statements.  Safety-Kleen has offered no evidence

7  regarding its intent other than a conclusory statement in the declaration of Mike Williams

8  that it was "[never] Safety-Kleen's intention not to show actual hours worked."  There is no

9  evidence that Safety-Kleen ever transmitted records of plaintiffs' actual hours to ADP.

10 Moreover, the court previously found in ruling on Safety-Kleen's earlier motion for summary

11 judgment that Safety-Kleen's own person most knowledgeable testified that Safety-Kleen

12 has no method of calculating how many hours a CSR works in a given day.  Counsel for

13 Safety-Kleen admitted to the court that Safety-Kleen has not modified its wage statement

14 procedures since this lawsuit was filed.[3]  In light of this evidence, Safety-Kleen may not

15 obtain summary judgment based on a vague allegation that it had no "will or desire" to omit

16 actual hours worked from plaintiffs' wage statements.  Plaintiffs have therefore established

17 a triable issue of fact as to whether Safety-Kleen's failure to identify actual hours worked on

18 their wage statements was intentional.  Safety-Kleen's motion for summary judgment on

19 plaintiffs' wage statement claim is therefore DENIED.

20 //

21 //

22 //

23 //

24

25    [3] Counsel for Safety-Kleen argued at the hearing that it is not obligated to record actual
26 hours worked because CSRs are paid a salary rather than an hourly wage.  Section 226 does
   not require employers to record actual hours worked on a wage statement "for any employee
27 whose compensation is solely based on a salary and who is exempt from payment of overtime
   . . . ."  Cal. Lab. Code § 226(a).  The issue of whether Safety-Kleen properly classified its
28 CSRs as exempt is being separately litigated in the related case of *Wamboldt v. Safety-Kleen
   Systems, Inc.*, C 07-0884 PJH.

1          4.       Claims arising on or before December 24, 2003

2          Safety-Kleen argues that it is entitled to summary judgment on all of plaintiffs' claims

3   on or before December 24, 2003, the date of a Delaware Bankruptcy Court order

4   confirming Safety-Kleen's Chapter 11 Plan of Reorganization.  Plaintiffs respond that their

5   claims are not barred by the confirmation order because they never received notice of the

6   bankruptcy proceedings.

7          A debtor's reorganization plan, once confirmed, binds the debtor and all creditors,

8   "whether or not the claim or interest of such creditor . . . is impaired under the plan and

9   whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).

10  Confirmation discharges the debtor from any debt that arose before the date of the

11  confirmation.  11 U.S.C. § 1141(d).  "Notwithstanding the broad language of 11 U.S.C. §

12  1141(d), due process demands that a creditor in a Chapter 11 case receive reasonable

13  notice of a claims bar date before it is effective against the creditor." Monster Content, LLC

14  v. Homes.com, Inc., 331 B.R. 438 (N.D. Cal. 2005) (citing City of New York v. New York,

15  New Haven & Hartford Railroad Co., 344 U.S. 293 , 297 (1953)).  Creditors are entitled to

16  "notice reasonably calculated, under all the circumstances, to apprise interested parties of

17  the pendency of the action and afford them an opportunity to present their objections."

18  Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950).

19         Publication is sufficient to satisfy the notice requirement as to creditors unknown to

20  the debtor.  Id. at 317.   A "known" creditor is one whose identity is either known or

21  "reasonably ascertainable by the debtor."  Tulsa v. Professional Collection Serv., Inc. v.

22  Pope, 485 U.S. 478, 490 (1988).  An "unknown" creditor is one whose "interests are either

23  conjectural or future or, although they could be discovered upon investigation, do not in due

24  course of business come to [the debtor's] knowledge." Mullane, 339 U.S. at 317.  A

25  creditor's identity is "reasonably ascertainable" if that creditor can be identified through

26  "reasonably diligent efforts."  Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4.

27  "A debtor does not have a 'duty to search out each conceivable or possible creditor and

28  urge that person or entity to make a claim against it.'"  Monster Content, 331 B.R. at 442

15

1  (quoting Charter Crude Oil Co. v. Petroleos Mexicanos, 125 B.R. 650, 654 (M.D. Fla.

2  1991)).

3       Here, plaintiffs have presented no evidence that they communicated their claims to

4  Safety-Kleen prior to entry of the Bankruptcy Court's confirmation order, nor have they

5  provided any reason why Safety-Kleen should be charged with knowledge of their claims.

6  See Depippo v. Kmart Corp., 335 B.R. 290, 297 (S.D.N.Y. 2005) (plaintiff not entitled to

7  formal notice where defendants had no reason to know that a criminal charge of shoplifting

8  against plaintiff would result in a lawsuit against defendants).  Compare Monster Content,

9  331 B.R. at 443 (creditor entitled to formal notice where creditor sent letter to debtor

10  alleging a potential misuse of trade secrets shortly before debtor filed proposed plan of

11  reorganization and obtained order of confirmation); In re Maya Constr. Co., 78 F.3d 1395,

12  1398 (9th Cir. 1996) (creditor who sent demand letter to debtor entitled to formal notice).

13       Accordingly, Safety-Kleen's motion for summary judgment on all of plaintiffs' claims

14  arising on or before December 24, 2003 is GRANTED.

15       C.     Plaintiffs' Motion for Class Certification

16       1.     Rule 23(a)

17       To obtain class certification, plaintiffs must first satisfy the four prerequisites of Rule

18  23(a).  Plaintiffs have satisfied the first prerequisite, numerosity, because the class consists

19  of at least 182 CSRs.  See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473,

20  483 (2d Cir. 1995) (numerosity presumed at 40 members).  Safety-Kleen's argument that

21  plaintiffs have failed to establish numerosity because they have offered no evidence of

22  policies or practices common to the entire class go more to whether plaintiffs have satisfied

23  the commonality and typicality requirements, discussed below.

24       As to the second prerequisite, commonality, plaintiffs argue that there are five issues

25  of law and fact common to the class: (1) whether Safety-Kleen failed to inform its CSRs of

26  their break rights; (2) whether Safety-Kleen's employee handbook misled CSRs into

27  believing that they had no right to take meal breaks; (3) whether Safety-Kleen failed to

28  relieve its CSRs of all duty during breaks; (4) whether Safety-Kleen failed to record its

16

1   CSRs' meal breaks as required under Wage Order 7, subsection 7; and (5) whether Safety-

2   Kleen failed to provide accurate itemized wage statements to its CSRs.  The first two

3   issues go to plaintiffs' claim that Safety-Kleen failed to provide its CSRs with meal breaks

4   and thus cannot satisfy the commonality requirement, as defendant has prevailed on that

5   claim.

6        Regarding the third issue, while plaintiffs have presented evidence sufficient to

7   establish a triable issue of fact as to whether <u>they</u> remained "on duty" throughout the

8   workday, they have presented no evidence as to whether <u>other</u> CSRs were similarly

9   required to remain "on duty" throughout the workday.  Instead, plaintiffs argue that Safety-

10   Kleen's CSRs could only be relieved of all duty by returning to their branch offices and

11   turning in their cell phones and trucks during their breaks.  In support of this argument,

12   plaintiffs cite California Motor Carrier Safety regulations, which define on-duty time as "[a]ll

13   time from the time a driver begins to work, or is required to be in readiness to work, until

14   the time the driver is relieved from work and all responsibility for performing work."  13 Cal.

15   Code Regs. § 1201.[4]  There are two problems with plaintiffs' reliance on this regulation.

16   First, plaintiffs have alleged in their declarations that they are <u>not</u> "drivers."  If CSRs

17   generally are drivers, but plaintiffs are not, then plaintiffs' claim regarding on-duty breaks

18   cannot satisfy the typicality requirement.  Even if plaintiffs were "drivers" within the meaning

19   of the regulation, however, they have submitted no evidence as to whether other CSRs

20   qualify as "drivers."  Indeed, in the related case of *Wamboldt v. Safety-Kleen*, C 07-0884

21   PJH, the plaintiff asserts on behalf of a class, to which plaintiffs here presumably belong,

22   that CSRs are <u>not</u> drivers and therefore that the motor carrier exemptions found in state

23   and federal law do not apply to them.

24        The second problem with plaintiffs' argument is that the regulation is not actually

25   very helpful in defining the difference between off-duty and on-duty time.  Although plaintiffs

26

27       [4] Plaintiffs also refer to federal regulations, but provide no citation other than 49 C.F.R.
§ 395, which does not contain any definition of on-duty time.  Plaintiffs quote the federal

28   regulations, however, in their opposition to Safety-Kleen's motion for summary judgment. The
quoted language appears to essentially mirror the state regulations.

1   interpret the regulation to define on-duty time as all time from the beginning to the end of a

2   driver's workday, the phrase "relieved from work and all responsibility for performing work"

3   could just as fairly be interpreted to define "off-duty" as time during the workday when a

4   driver ceases all work activities.

5        Plaintiffs also argue that any time spent inside a truck is on-duty time under 13 Cal.

6   Code Regs. § 1201.  Section 1201(4) includes within the definition of on-duty time "[a]ll

7   time, other than driving time, in or upon any motor vehicle, except time spent resting in a

8   sleeper berth . . . ."  Again, plaintiffs have submitted no evidence that CSRs qualify as

9   "drivers" within the meaning of this regulation and have in fact alleged that they are not

10  drivers.  Plaintiffs have also failed to provide any authority for their argument that

11  California's Motor Carrier Safety regulations, which apply only to "drivers," should be

12  applied to define the term "duty" in Wage Order 7, which applies generally to all employees

13  in the mercantile industry, broadly defined as "any industry, business, or establishment

14  operated for the purpose of purchasing, selling, or distributing goods or commodities at

15  wholesale or retail; or for the purpose of renting goods or commodities."  8 Cal. Code Regs.

16  § 11070, subsection 2(H).[5]  Accordingly, plaintiffs have not established commonality as to

17  their claim that Safety-Kleen failed to provide off-duty meal breaks or obtain consent from

18  its CSRs to take on-duty meal breaks.

19        As to the fourth issue, Safety-Kleen does not contest plaintiffs' claim that it kept no

20  records of employee meal breaks.  Accordingly, plaintiffs have established commonality as

21  to this claim.

22        Regarding the fifth issue, Safety-Kleen does not dispute that its wage statements for

23  CSRs always indicate 80 hours per two-week period, regardless of the number of hours

24  _____

25        [5] Counsel for plaintiffs also argued to the court that an employee who has custody of
    his or her employer's property is necessarily on duty within the meaning of Wage Order 7.
26  Counsel conceded that there is no authority for this proposition, and the rule does not strike
    the court as reasonable.  One can easily imagine a situation where an employee has custody
27  of company property, such as a laptop computer or a work uniform, but is engaged in purely
    non-work activities, such as eating a meal with family members, or watching television.  To
28  argue that mere possession of the property transforms such activities into an on-duty break
    period is a stretch.

worked.  Safety-Kleen's arguments regarding injury, which it reiterates in opposition to plaintiffs' class certification motion, have been rejected by the court as discussed above. Accordingly, plaintiffs have established commonality as to their claim that Safety-Kleen failed to provide CSRs with accurate itemized wage statements.

The parties' arguments regarding typicality essentially reiterate their arguments regarding commonality and do not add anything of substance to the above analysis. Plaintiffs argue that they have established typicality because the issues discussed above arise out of Safety-Kleen's "systemic" practices.  Plaintiffs have established typicality as to two of those issues: Safety-Kleen's failure to record meal breaks and Safety-Kleen's failure to provide itemized wage statements.  Plaintiffs have failed to establish typicality as to the other three issues for the reasons discussed above.

Safety-Kleen does not contest plaintiffs' arguments regarding adequacy of class representation.  Briefly, plaintiffs have established that they have no conflicts with the class, that they are determined to see the class claims vindicated, and that they have retained competent counsel.

2.      Rule 23(b)

Plaintiffs are seeking class certification under Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement is "far more demanding" than the commonality prerequisite under Rule 23(a).  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).  "In contrast to Rule 23(a)(1), Rule 23(b)(3) focuses on the relationship between common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks and citation omitted).

1    Even if plaintiffs had satisfied commonality as to their claim that Safety-Kleen failed

2   to relieve its CSRs of all duty during meal breaks, plaintiffs have failed to establish that

3   common issues of law or fact would predominate over individual issues in the litigation of

4   this claim.  As discussed above, plaintiffs have submitted no evidence regarding whether

5   other CSRs were required to remain "on duty" during meal breaks.  There is no evidence

6   that other CSRs were required to remain in constant contact with their branches or required

7   to fill out a log indicating that they were on duty all day, as plaintiffs allege was required of

8   them.  Plaintiffs make no argument as to why litigation of this claim will more likely involve

9   common issues of fact than individual issues.  Accordingly, plaintiffs have failed to establish

10   predominance as to this claim.

11    Plaintiffs have established that common issues will predominate over individual

12   issues in the litigation of their claims that Safety-Kleen failed to record meal breaks and that

13   Safety-Kleen failed to provide CSRs with accurate itemized wage statements.  As Safety-

14   Kleen does not dispute plaintiffs' allegation that these are class-wide practices, litigation of

15   these claims will involve class-wide proof rather than individual inquiries.

16    Plaintiffs make a persuasive argument that class action is the superior method of

17   adjudicating the claims because some class members may fear reprisal and because the

18   cost of individual litigation would be prohibitive for most, if not all, class members.  See

19   Scott v. Aetna Services, Inc., 210 F.R.D. 261, 268 (D. Conn. 2002).  Safety-Kleen argues

20   that certification should be denied because class members have available to them other

21   means of adjudicating their claims, such as before the California Labor Commissioner or in

22   state court.  However, "courts have not hesitated to certify class actions for wage and hour

23   claims simply because California law provides for administrative relief."  Wang v. Chinese

24   Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005).

25    The final three factors under Rule 23(b)(3) weigh in favor of certification, and Safety-

26   Kleen does not contest plaintiffs' arguments regarding these factors.  Briefly, there is no

27   other pending litigation involving plaintiffs' claims, as the related case of *Stegall v. Safety-*

28   *Kleen Systems, Inc.,* 07-0886 PJH has been dismissed.  There is no evidence that

1   concentrating litigation of the claims in this forum will be undesirable.  There is likewise no

2   reason to believe that the class action will be unmanageable.

3         In sum, the court finds that plaintiffs have satisfied the prerequisites of Rule 23(a)

4   and the requirements of Rule 23(b) as to their claim that Safety-Kleen failed to record its

5   CSRs' meal breaks and their claim that Safety-Kleen failed to provide its CSRs with

6   accurate itemized wage statements.  Plaintiffs' motion for class certification is therefore

7   granted with respect to these two claims.  The court denies plaintiffs' motion for class

8   certification as to plaintiffs' claim that Safety-Kleen failed to relieve its CSRs of all duty

9   during meal breaks and as to the two claims that have been adjudicated in defendant's

10  favor regarding provision of meal breaks.

11                                    **CONCLUSION**

12        Accordingly, the motion for summary judgment is GRANTED IN PART AND DENIED

13  IN PART.  Summary judgment is granted on the portions of plaintiffs' claims based on

14  Safety-Kleen's failure to provide meal and rest breaks and as to any claims arising on or

15  before December 24, 2003.  Summary judgment is denied as to plaintiffs' claims that

16  Safety-Kleen failed to relieve named plaintiffs of all duty during meal breaks and that

17  Safety-Kleen failed to provide them with accurate itemized wage statements.

18        The motion for class certification is GRANTED IN PART AND DENIED IN PART.

19  Class certification is denied as to plaintiffs' claim that Safety-Kleen failed to inform CSRs of

20  their right to breaks, provided misleading information about breaks in the handbook, and

21  failed to relieve CSRs of all duty during meal breaks.  Class certification is granted as to

22  plaintiffs' claims that Safety-Kleen failed to record its CSRs' meal breaks and that Safety-

23  Kleen failed to provide its CSRs with accurate itemized wage statements.

24        **IT IS SO ORDERED.**

25  Dated: July 28, 2008

26

27                                                    _____
                                                      PHYLLIS J. HAMILTON
28                                                    United States District Judge