UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REYMUNDO PEREZ, et al.,

    Plaintiffs,

    v.

SAFETY-KLEEN SYSTEMS, INC.,

    Defendant.

_____/

No. C 05-5338 PJH

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES**

Before the court is plaintiffs' motion for attorney's fees and costs pursuant to California Labor Code § 226 and California Code of Civil Procedure § 1021.5. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiffs' motion, for the following reasons.

## BACKGROUND

This is a wage and hour case arising out of defendant Safety-Kleen System Inc.'s ("Safety-Kleen") alleged failure to provide meal and rest breaks to its customer service representatives ("CSR"), as required by California Labor Code § 512 and Industrial Welfare Commission ("IWC") Wage Order 7-2001, and failure to provide accurate itemized wage statements to CSRs, as required by California Labor Code § 226. Plaintiffs Raymundo Perez and Jerrel Doane (collectively "plaintiffs") represent all current and former employees of Safety-Kleen employed in the state of California in the position of CSR during the alleged class period.

Plaintiffs filed their original complaint on November 23, 2005. On August 30, 2007, the operative First Amended Complaint was filed. See generally First Amended Complaint

1 ("FAC"). The FAC alleged four causes of action against defendants: (1) failure to provide
2 meal periods and rest breaks in violation of Cal. Labor Code §§ 226.7, 512, and IWC Wage
3 Order No. 7; (2) failure to provide itemized wage statements, in violation of Cal. Labor Code
4 § 226; (3) for waiting time penalties pursuant to Cal. Labor Code §§ 201-03; and (4)
5 violation of California's unfair competition law, pursuant to Cal. Bus. & Prof. Code §§
6 17200-17208. See id.

7 In May 2008, plaintiffs sought class certification, and defendant sought summary
8 judgment. On July 28, 2008, the court granted both motions in part, and denied them in
9 part. Critically, the court granted defendant's motion for summary judgment with respect to
10 plaintiffs' first cause of action alleging meal period/rest break violations. See Order
11 Granting in Part and Denying in Part Motions for Summary Judgment and for Class
12 Certification ("MSJ and Class Cert. Order"), at 12. With respect to certification, the court
13 denied certification with respect to plaintiffs' meal period/rest break violations in view of
14 defendant's success on the merits of those claims, but certified for class treatment the
15 narrower claims that (1) Safety-Kleen failed to record its CSRs' meal breaks; and (2)
16 Safety-Kleen failed to provide its CSRs' with accurate itemized wage statements. See MSJ
17 and Class Cert. Order at 16-21.

18 Subsequent to the court's July 2008 order, the parties entered into a settlement
19 agreement. As part of the settlement, and in exchange for a release of all claims
20 (excepting the meal period/rest break claim), Safety-Kleen agreed to pay a maximum of
21 $210,000 into a settlement fund. Of this amount, $5,000 would go to each of the class
22 representatives as an incentive payment, leaving the remaining balance of $200,000 for
23 class members, to be distributed among them based upon the total number of itemized
24 wage statements received by class members during the claim period.[1] Safety-Kleen also
25 agreed, as part of the settlement agreement, to commence furnishing total hours worked as

---

[1] The settlement also provided for the payment of up to $15,000 in administrative costs, to be paid out from unclaimed portions of the settlement fund that were anticipated.

1  part of all itemized wage statements provided to CSRs, in accordance with Cal. Lab. Code
2  § 226(a)(2). The court granted preliminary approval of the settlement on April 15, 2009,
3  and final approval was granted on October 22, 2009.
4       On August 3, 2009, plaintiffs filed the instant motion to recover $1,601,858.10 in
5  attorney's fees and $11,443.30 in costs, on grounds that plaintiffs are entitled to "prevailing
6  party" fees pursuant to two California fee-shifting statutes: Cal. Labor Code § 226(e),[2] and
7  Cal. Code Civil Proc. § 1021.5.

**DISCUSSION**

A.    Governing Legal Standards

    1.    <u>California Labor Code § 226</u>

Cal. Labor Code § 226(e) is applicable when a plaintiff succeeds in demonstrating a violation of Cal. Labor Code § 226(a). Section 226(a) requires employers to furnish "an accurate itemized [wage] statement in writing," showing gross wages earned by an employee, total hours worked, and all applicable hourly rates earned, among other things. An employee suffering injury as a result of a "knowing and intentional failure by an employer" to furnish such itemized wage statements is entitled to recover "the greater of all actual damages ... and is entitled to an award of costs and reasonable attorney's fees." <u>See</u> Cal. Labor Code § 226(e). Attorney's fees and costs should be awarded to a prevailing plaintiff under § 226(a), as a matter of right. <u>See Harrington v. Payroll Entm't Servs, Inc.</u>, 160 Cal. App. 4th 589, 594 (2008).

    2.    <u>California Code of Civil Procedure § 1021.5</u>

California Code of Civil Procedure § 1021.5 codifies the "private attorney general"

---

[2] Plaintiffs' opening brief actually invokes Cal. Labor Code § 226(g) as authority for plaintiffs' fee request. However, in plaintiffs' reply brief, as well as at the hearing on the motion, plaintiffs amended their argument to include reliance on § 226(e), as well. Closer inspection of the complaint reveals this amendment was likely necessitated by the fact that the FAC explicitly alleges a prayer for "damages and penalties" under § 226(e) only, and makes no reference to § 226(g). Accordingly, and as the scope of requested relief sought is limited to that pled in the operative complaint, the court treats plaintiffs' request for attorney's fees pursuant to Cal. Labor Code § 226 as one arising under § 226(e) only.

3

doctrine pursuant to which attorney's fees may be awarded to a prevailing party. See Punsly v. Ho, 105 Cal. App. 4th 102, 109 (2003). This doctrine is intended to "encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where statutory or constitutional rights have been violated." Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th 672, 690 (2000). The private attorney general doctrine is based on the theory that "privately initiated lawsuits are often essential to the effectuation of the fundamental public polices embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Abouab v. City and County of San Francisco, 141 Cal. App. 4th 643, 663 (2006)(citation and quotation omitted).

Cal. Code Civ. Proc. § 1021.5 specifically provides for an award of attorney's fees in any "action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or non-pecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Thus, and as construed, three fundamental criteria are required to support an award of attorney's fees under § 1021.5: (1) the action must result in the enforcement of "an important right" affecting the public interest; (2) second, "a significant benefit" must be conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement must be such as to make the award appropriate. See Families Unafraid to Uphold Rural El Dorado County v. Bd. of Supervisors, 79 Cal. App. 4th 505, 511-512 (2000).

3. "Reasonableness" Standard

Once a determination is made that attorney's fees are appropriate, the standard to be applied in calculating an award of attorney's fees is that of "reasonableness." Whether

4

under the California state law, or federal law, a determination of reasonableness generally involves a two-step process.[3] First, the court calculates the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. See, e.g., Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32; PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084, 1095 (2000); see also McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In determining the lodestar amount, the California Supreme Court has "expressly approved the use of prevailing hourly rates as a basis for the lodestar." Ketchum, 24 Cal. 4th at 1132.

Second, the court may adjust the lodestar upward (via fee enhancer or "multiplier") or downward based on an evaluation of certain factors, including, among other things: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; and whether the fee is fixed or contingent. See id.; cf. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).[4] Not all factors are always relevant in determining whether an award is reasonable. The party seeking a fee enhancement bears the burden of proof. See Ketchum, 24 Cal. 4th at 1138.

---

[3] As both parties duly note, California law has looked to federal authorities in construing California's fee-shifting statutes and in particular, the "private attorney general" statute codified in Cal. Code Civ. Proc. § 1021.5. See, e.g., Woodland Hills Resident Assoc v. City Council of Los Angeles, 23 Cal. 3d 917, 934 (1979); Serrano v. Unruh, 32 Cal. 3d 621, 634 (1982).

[4] The lodestar "adjustment" analysis under federal law is slightly different from that under state law. Specifically, since first articulating twelve relevant enhancement factors in Kerr, the Ninth Circuit subsequently stated that only those Kerr factors – approximately seven – that are *not* subsumed within the initial lodestar determination (which initial determination coincides with the majority of the factors just listed) are relevant to analyzing the propriety of any upward or downward adjustment. See Morales v. City of San Rafael, 96 F.3d 359, 364 fn. 9 (9th Cir. 1996). Additionally, the viability of the "contingent fee" factor has been called into question by the Supreme Court's decision in City of Burlington v. Dague, 505 U.S. 557 (1992). Because the court must construe the applicability of California's fee-shifting statutes under state law, however, the foregoing listed factors nonetheless remain relevant to the enhancement determination here. See, e.g., Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 259 fn. 31 (1975)(federal law follows state rules of law governing awardability of attorney's fees, as they are deemed "substantive").

Notably, the court may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated. See Serrano, 32 Cal. 3d at 635; Ketchum, 24 Cal. 4th at 1137; see also Hensley v. Eckerhart, 461 U.S. 424, 434 (1980) (court may deny compensation for "hours that are excessive, redundant, or otherwise unnecessary").

B.  Plaintiffs' Motion for Attorney's Fees

Plaintiffs seek attorney's fees and costs as the "prevailing party" under both section 226(e) of the California Labor Code and/or section 1021.5 of the California Code of Civil Procedure. A determination whether to grant plaintiffs' request depends on resolution of two overriding issues: (1) whether an award of attorney's fees and costs is warranted under either statute; and (2) whether, if so, the amount of attorney's fees and costs requested here is reasonable.

    1.    <u>Whether Fees are Warranted Under Cal. Labor Code § 226 and Cal. Code Civil Procedure § 1021.5</u>

A determination whether fees are warranted under either statute in question depends first upon whether plaintiffs may properly be deemed the "prevailing party." Plaintiffs preliminarily concede that they did not succeed with respect to their claim alleging failure to provide meal periods/rest breaks, but assert that, by virtue of the settlement agreement executed by the parties, they may still be deemed the prevailing party as to the three remaining claims alleged in the FAC: their claim for failure to provide itemized wage statements; for failure to pay waiting time penalties; and for violation of California's unfair competition law. See Mot. Atty Fees at 14:25-15:1. Defendant, by contrast, responds that the only claim upon which plaintiffs achieved any success was their claim for failure to provide itemized wage statements pursuant to California Labor Code § 226(a), and plaintiffs are not permitted to recover fees as to any remaining claims.

On balance, defendant overreaches in attempting to limit plaintiffs' success to the itemized wage statement claim alone. To be sure, the court's grant of summary judgment in defendant's favor on the meal period/rest break claim means that plaintiff cannot be

6

1  deemed the prevailing party as to this claim.  Furthermore, while the court's summary
2  judgment order and corresponding decision on plaintiffs' class certification motion
3  acknowledged the viability of plaintiffs' itemized wage statement claim, the order did not
4  address the two remaining claims alleging failure to pay waiting time penalties and violation
5  of California's unfair competition law, resulting in the lack of a dispositive ruling on the
6  merits of either.  Contrary to defendant's position on the matter, however, it does not follow
7  from the lack of opportunity to address either claim, that plaintiffs have failed to prevail on
8  them.  Rather, it is truer to say that there was simply no litigated final resolution regarding
9  the claims, and in the absence of any direct action on the claims, the claims remained
10 viable.  Indeed, the scope of the court's earlier ruling was framed by the parties' own
11 arguments, for it is the parties themselves who failed to include argument going to the
12 merits of either claim.

All of which leads to the observation that, when the parties executed their final settlement agreement, and defendant agreed to pay a certain specified sum in exchange for a release of "any and all claims... that arise out of the facts alleged in the Class Action complaint," the claims alleging failure to pay waiting time penalties and violation of California's unfair competition law were among those claims for which a release was negotiated. See, e.g., Declaration of Jeremy R. Fietz ISO Mot. Final App. and Atty Fees ("Fietz Decl."), Ex. B at ¶ 28(b). In other words, the executed settlement agreement covers not only the itemized wage statement claim, but also the remaining two claims alleging failure to pay waiting time penalties and violation of California's unfair competition law. As a result, and for purposes of attorney's fees, it is these *three* claims upon which plaintiffs may be deemed the "prevailing party."[5]

---

[5] To the extent that plaintiffs have attempted to claim they are the prevailing party with respect to an additional claim for "failure to record" meal breaks, the court rejects plaintiffs' reliance on such a claim. While it is true that the court's class certification order ultimately certified plaintiffs "claim that Safety-Kleen failed to record its CSR's meal breaks and their claim that Safety-Kleen failed to provide its CSRs with accurate itemized wage statements," the language used by the court tracked the language and arguments advanced by the parties. Yet at no time did the parties' arguments substantively advance the existence of a "failure to

7

Having determined the scope of the claims properly at issue, the court must next determine whether attorney's fees are warranted in connection with all three claims, under Cal. Labor Code § 226(e), and/or California Code of Civil Procedure § 1021.5.

Beginning with Cal. Labor Code § 226, plaintiffs are entitled to an award of attorney's fees and costs pursuant to subsection (e) in connection with their itemized wage statement claim. Plaintiffs have alleged that defendant violated Cal. Labor Code § 226(a) by failing to provide itemized wage statements. See FAC, ¶¶ 38 - 41. And as both parties acknowledge, plaintiffs successfully prevailed on their § 226(a) claim when they sought and were granted certification of the claim, and then subsequently negotiated a settlement payment in exchange for a release of the claim. Since § 226(e) provides for an award of attorney's fees and costs as a matter of right to a prevailing plaintiff under § 226(a), an award of both in connection with plaintiffs' itemized wage statement claim is appropriate. See Harrington v. Payroll Entm't Servs, Inc., 160 Cal. App. 4th 589, 594 (2008).

This leaves for resolution plaintiffs' remaining argument that an award of attorney's fees is justified under Cal. Civ. Proc. Code § 1021.5, in connection with plaintiffs' successful settlement of the two remaining claims at issue: failure to pay waiting time penalties; and for violation of California's unfair competition law. In determining whether a plaintiff is a successful party for purposes of section 1021.5, the critical fact is the impact of the action, not the manner of its resolution. See Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc., 127 Cal. App. 4th 387, 402-03 (2005). The trial court in its discretion 'must realistically assess the litigation and determine,' from a practical perspective, whether the action serves to (a) vindicate an "important right," (b) confer a "significant benefit" on the public or a large class of persons, and (c) justifies an award of fees, when considering the necessity and burden of private enforcement. See, e.g., Families Unafraid to Uphold Rural El Dorado County, 79 Cal. App. 4th at 511-512; see also

---

record" meal break claim. Rather, the only claim at the heart of the parties' arguments – and the only claim, more importantly, that was actually alleged in the FAC – was a claim for failure to provide itemized wage statements.

Woodland Hills Resident Assoc., Inc., v. City Council of Los Angeles, 23 Cal. 3d 917, 935 (1979).

Plaintiffs here contend that each of the foregoing factors is satisfied, such that an award of attorney's fees is warranted. They note that their litigation and settlement of the action have won relief for over 200 individuals, have protected the interests of defendant's employees for the indefinite future, and have upheld state law in place of the state attorney general – all of which indicates that an "important" right has been vindicated, and a "significant benefit" conferred on a significant number of persons. See Pl. Mot. Atty Fee Br. at 11:22-25. Plaintiffs also note that, absent their success on behalf of the class as a whole, monetary rewards for the individual plaintiffs would have been relatively small vis-a-vis the attorney's fees the individuals would have incurred had they been forced to individually litigate the action. Id. at 11:26-12:7. Thus, combined with the failure of any public officials to pursue the same violations alleged here, the necessity and burden of private enforcement further justifies an award of attorney's fees under § 1021.5.

In opposition to the request, defendant limits its argument to the propriety of attorney's fees in connection with the itemized wage statement claim only, omitting any substantive response in connection with plaintiffs' claims for failure to pay waiting time penalties, and for violation of California's unfair competition law. With respect to the itemized wage statement claim, however, defendant characterizes plaintiffs' claim as one that involves only the "right of one subset of defendant's employees to be furnished one more piece of information... on their itemized wage statements." The provision of such a minimal right to the plaintiff class is insufficient, continues defendant, to justify treatment of the present action as one that involves an "important" right that confers a "significant benefit" on the public at large. See Opp. Br. at 20:14-18. Nor can plaintiffs demonstrate that their lawsuit was necessary, since plaintiffs never attempted to resolve the itemized wage statement dispute prior to undertaking litigation of the matter. Id. at 21:11-25.

Ultimately, the court sides with plaintiffs. As a preliminary matter, the court rejects

1 defendant's arguments as to the propriety of attorney's fees under § 1021.5 in connection
2 with the itemized wage statement claim as inapposite, given that the court has already
3 determined that attorney's fees and costs are recoverable for that claim under Cal. Labor
4 Code § 226(e). Thus, for purposes of assessing the propriety of any award under §
5 1021.5, it is the remaining two causes of action – which defendant fails to address – that
6 are relevant.

7 With respect to the substance of plaintiffs' arguments, moreover, the court finds
8 them well-taken. First, plaintiffs' action alleging failure to pay waiting time penalties, and for
9 violation of California's unfair competition law, implicates rights expressly conferred by state
10 statute, pursuant to Cal. Labor Code §§ 201-203, and Cal. Bus. & Prof. Code §§ 17200-
11 17208. Thus, and under relevant state supreme court precedent, plaintiffs' successful
12 negotiation of a settlement and release of such claims on behalf of the wider class, suffices
13 to establish the vindication of an "important right" pursuant to section 1021.5. See
14 Woodland, 23 Cal. 3d at 935. Second, the executed settlement agreement secured on
15 behalf of more than 200 class members both monetary and injunctive relief, in exchange for
16 the class members' release of claims for failure to pay waiting time penalties, and for
17 violation of California's unfair competition law (in addition to the itemized wage statement
18 claim). In so doing, plaintiffs have effectuated for a large group of individuals the statutory
19 policies codified at Cal. Labor Code §§ 201-203, and Cal. Bus. & Prof. Code §§ 17200-
20 17208, and thereby conferred a "significant benefit" upon a large class of individuals. See
21 Woodland, 23 Cal. 3d at 939 (a "significant benefit" may be recognized simply from the
22 effectuation of a fundamental constitutional or statutory policy). The court duly
23 acknowledges, as defendant points out, that the public always derives a benefit when
24 illegal private or public conduct is rectified, and that the legislature did not intend to
25 authorize an award of attorney's fees in every case involving a statutory violation. Id. at
26 939. Notwithstanding, however, the court finds that the benefits conferred upon the more
27 than 200 class members at issue here, are sufficiently "significant" within the meaning of §
28

1021.5. Finally, the court finds that the necessity and burden of private enforcement justifies an award of attorney's fees pursuant to § 1021.5, because, in view of the ultimate recovery secured by the negotiated settlement agreement and the nature of the claims covered therein, as well as the failure of any public entity to pursue defendant for the violations alleged by plaintiffs, the cost of plaintiffs' legal victory can rightly be said to transcend the plaintiffs' individual personal interest in the matter. See, e.g., Woodland, 23 Cal. 3d at 941 (fees under § 1021.5 appropriate when the "cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion' to his individual stake in the matter).

In sum, taking into account the significance of the benefit secured by plaintiffs via the negotiated settlement with defendant, as well as the size of the class receiving the benefit in light of all pertinent circumstances, the court concludes that plaintiffs are entitled to an award of attorney's fees in connection with their remaining claims for failure to pay waiting time penalties, and for violation of California's unfair competition law, pursuant to Cal. Code Civil Proc. § 1021.5.[6]

2. <u>Whether the Amount of Fees and Costs Sought is Reasonable</u>

Having determined that attorney's fees and costs are warranted under Cal. Labor Code § 226(e) for at least some of the work performed and that attorney's fees are further warranted under Cal. Civ. Proc. Code § 1021.5 for the rest of the work performed, the only remaining issue for the court is whether the fees and costs requested– $1,601,858.10 in attorney's fees and $11,443.30 in costs – are reasonable.

    a. fees

In support of their fee request, plaintiffs have submitted the declarations of Jeremy R. Fietz, Barron E. Ramos, and Kristen E. Caverly. <u>See generally</u> Fietz Decl.; Declaration of Barron E. Ramos ISO Mot. Final App. and Atty Fees ("Ramos Decl."); and Declaration of

---

[6] Unlike Cal. Labor Code § 226(e), section 1021.5 does not provide for an award of "costs" in addition to attorney's fees.

11

Kristen E. Caverly ISO Mot. Final App. and Atty Fees ("Caverly Decl."). These three declarations set forth the following facts: (1) Mr. Fietz spent 1,056.60 hours on the case at $420 per hour, for a total fee amount of $443,772; (2) Mr. Ramos spent 259.55 hours on the case at $550 per hour, for a total fee amount of $116,934; and (3) Ms. Caverly spent 195.75 hours on the case at $400 per hour, for a total fee amount of $80,289.25. See Fietz Decl., ¶¶ 13-14, Ramos Decl., ¶¶ 29-30, Caverly Decl., ¶¶ 4-5. According to plaintiffs' representation, these numbers correspond with work performed on only the three claims for which the parties settled, and exclude the fees incurred for work on the failure to provide meal/rest period claim. Thus, in the aggregate, these figures represent a lodestar amount of approximately $640,995.25, and do not include a multiplier. Plaintiffs have applied a multiplier of 2.5, in order to arrive at the approximately $1.6 million amount being requested by plaintiffs.

Defendant objects to the figures proffered by plaintiffs on grounds that the amounts requested are unreasonable. Specifically, defendant notes: that plaintiffs' showing makes no effort to demonstrate the actual work expended in pursuit of each of the claims upon which recovery may be premised; that Mssrs. Fietz and Ramos both concede that time spent litigating plaintiffs' claim for failure to properly *record* meal periods overlaps with the claim for failure to *provide* meal periods, yet none of these claims has anything to do with the claims for which attorney's fees are recoverable, and plaintiffs have done nothing to segregate out these amounts from the fees being requested; that the declarations do not properly itemize work performed in the attached billing statements; that plaintiffs have not submitted any authority establishing the prevailing wage rate in the community; that plaintiffs did not achieve a level of success justifying their fee award; and that plaintiffs are not entitled to an upward lodestar adjustment.

Many of these objections are well taken. Critically, plaintiffs' supporting declarations, which purport to include itemized billing records, are remarkably vague in setting forth the actual legal issues and claims that pertain to each entry. The itemized entries submitted

instead paint with a broad brushtroke and state the work performed in only the broadest of terms (e.g., generic entries for "correspondence," time spent on "cert issues" and "legal research," without identification of legal issues with which such entries were concerned). See, e.g., Fietz Decl., Ex. A; Ramos Decl., Ex. B; Caverly Decl., Ex. A. The generic nature of these itemized billing records is particularly problematic for the court because, as already noted, plaintiffs are entitled to attorney's fees pertaining to work performed on three claims only. Thus, the failure to properly itemize time spent on all claims makes it impossible for the court to determine what work was performed in relation to the recoverable claims, as opposed to the non-recoverable meal period/rest break claim. Such a concern is especially valid, in view of the fact that the vast majority of time spent on this case concerned the unsuccessful meal period/rest break claims. As such, without an adequate level of specificity in the itemized billing statements, the risk of over-inclusion vis-a-vis the meal period/rest break claims looms large.

Furthermore, defendant is also correct that plaintiffs have submitted no evidence – aside from conclusory statements noting that the charged hourly rates are "in line with hourly rates charged by other attorneys in the legal community for similar work" – purporting to establish with any degree of specificity or clarity precisely what the prevailing rate in the *relevant* community is for *similar* work. Fietz Decl., ¶ 14; Ramos Decl., ¶ 20; see also Caverly Decl., ¶ 4. Although plaintiffs' counsel argued at the hearing that no such detailed showing regarding prevailing rates is required under California law, plaintiffs failed to provide any controlling legal authority firmly establishing this proposition. Thus, it is difficult for the court to ascertain the propriety of the hourly rate being charged in connection with counsel's work.

In addition to the difficulties presented by plaintiffs' failure to set forth detailed billing statements demonstrating a convincing correlation between the work performed and the claims for which the price of such work is recoverable, or the propriety of the hourly rates charged for such, there is an additional glaring obstacle to plaintiffs' showing of

"reasonableness." That is the issue of the level of success achieved by plaintiffs. Properly viewed, the final results obtained by plaintiffs in their settlement negotiations at best represent only partial success on the claims initially advanced by them. For the heart of plaintiffs' case, as demonstrated by the primary focus of the parties' briefing on the motions for summary judgment and for class certification, centered on the unsuccessful failure to provide meal periods/rest break claim – *not* the failure to provide itemized wage statement claim (which was only minimally litigated before the court), or the remaining claims for failure to pay waiting time penalties and for violation of California's unfair competition law (which were not litigated before the court at all). Similarly, the vast portion of monetary damages originally requested – in the form of "additional" and unpaid wages – corresponded with the meal period/rest break violation claim, rather than the remaining claims, for which penalties and damages were sought, in addition to injunctive relief. See generally FAC. As such, plaintiffs' negotiated settlement – which obtained $200,000 for the class members as a whole (as well as limited injunctive relief) on the basis of the three viable claims that were left – did not actually secure relief corresponding with the primary focus or goal of the litigation overall. Thus, and in sum, the "degree" of plaintiffs' success here, in relation to the other goals of the lawsuit as a whole, further suggests that plaintiffs' suggested lodestar amount stretches the parameters of what should be considered "reasonable" in this case. See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989)("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee..."); Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)(noting that "the relief, however significant, is limited in comparison to the scope of the litigation as a whole").

    To that end, defendant also correctly notes the impropriety of any upward lodestar adjustment under such circumstances. Courts should only award multipliers for exceptional representation when the quality of representation exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience. See

1 Ketchum v. Moses, 24 Cal. 4th 1122, 1138-39 (2006).  Here, however, given that plaintiffs
2 suffered a legal defeat in connection with the heart of their case and scarcely litigated the
3 remaining claims for which they ultimately secured a $210,000 settlement victory, the court
4 cannot conclude that the quality of counsel's representation exceeds the quality of
5 representation that would have been provided by an attorney of comparable skill and
6 experience, such that a multiplier should be awarded.

Finally, the court's own review of the billing records submitted by plaintiffs highlight the inclusion of inaccurate and/or improper entries consistent with the foregoing observations.  Ms. Caverly's declaration, for example, contains an entry for May 25, 2007, in which she seeks $1,700 worth of fees in exchange for work performed in "preparation for MSJ hearing on meal and break time issue" – i.e., the precise claim for which recovery is disallowed.  See Caverly Decl., Ex A at p. 4.  Her declaration also contains a February 16, 2007 entry in connection with the "deposition of Stegall."  Id. at p. 2.  However, as defendant points out, the Stegall action was not consolidated with the present action until April 17, 2007; thus, work performed prior to that date in connection with that action is not recoverable.  Nor is Ms. Caverly's declaration the only problematic one.  Mr. Fietz, for example, includes at least one entry for which the connection between work performed, and claims for which attorney's fees are allowed, is questionable: on August 8, 2008, he lists an entry describing research going to "8 CA ADC section 11070" and California Labor Code § 1199.  See Fietz Decl., Ex. A at 25.  It is not immediately clear to the court, however, how these statutory provisions are related to the three claims for which attorney's fees are warranted.  In sum, entries such as these present yet another barrier to establishing the requested amount as "reasonable."

Based on the foregoing considerations, the court cannot conclude that plaintiffs have met their burden in demonstrating that the requested lodestar amount – or the issuance of a multiplier thereon – represents a "reasonable" award of attorney's fees in consideration of the claims for which an award of fee's is permitted.  See Ketchum, 24 Cal. 4th at 1138 (the

party seeking a fee enhancement bears the burden of proof).  Plaintiffs are only entitled to recover that which is reasonable.  See Serrano, 32 Cal. 3d at 635; Ketchum, 24 Cal. 4th at 1137; see also Hensley v. Eckerhart, 461 U.S. 424, 434 (1980) (court may deny compensation for "hours that are excessive, redundant, or otherwise unnecessary").

It is the court's view that, taking all the foregoing into account, the lodestar amount proffered by plaintiffs should be reduced by 50%, in order to account for the over-inclusion of unrecoverable claims, the limited success in view of the failure of the meal period/rest break claim, and the failure to establish a valid prevailing hourly rate.  Thus, plaintiffs' counsel will be awarded $320,497.63 for the work performed in securing a settlement agreement on behalf of the plaintiff class in connection with plaintiffs' remaining viable claims.  Since no additional grounds for upward adjustment of the lodestar figure have been demonstrated by plaintiffs, the court furthermore declines to apply a multiplier to the lodestar amount.

b. costs

Cal. Labor Code § 226(e) allows the court to award "costs," in addition to attorney's fees.  See Cal. Labor Code § 226(e).  Plaintiffs seek an award of costs equal to $11,443.30.  According to plaintiffs' declarations, the breakdown of costs is as follows:  Mr. Fietz has expended a total of $7,097.89 in costs, of unexplained nature; Mr. Ramos has expended $845 in costs, primarily consisting of traveling expenses, and attending hearings and depositions; and Ms. Caverly has expended $3,500.41 in costs, primarily on travel, legal research, and overnight mailing deliveries.  See Fietz Decl., ¶ 14; Ramos Decl., ¶ 30; Caverly Decl., ¶ 6, Ex. A.

With the exception of Ms. Caverly, however, none of the declarations includes any evidence that substantiates the costs incurred, let alone provides an itemized list of costs.  Such information is necessary for the court to ascertain the correctness and accuracy of plaintiffs' cost request.  Furthermore, such itemization is necessary for the court to determine that those costs being awarded correspond with costs incurred in connection

with plaintiffs' itemized wage statement claim, since this is the only claim for which recovery of costs is statutorily authorized.

Without any substantiation of costs, plaintiffs have failed to demonstrate their entitlement to an award of costs, and the court cannot grant plaintiffs' request as made. Accordingly, costs in the amount of $7,942.89, as requested by Mssrs. Fietz and Ramos, are DENIED. Costs in the amount of $3,500.41, however, as requested and substantiated by Ms. Caverly, are allowable, and hereby GRANTED.

C. Conclusion

For all the foregoing reasons, plaintiffs' motion for attorney's fees is GRANTED as limited herein, and plaintiffs' motion for costs is GRANTED in part and DENIED in part. Final judgment having been entered on October 22, 2009, the clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 15, 2010

PHYLLIS J. HAMILTON
United States District Judge